Filed 7/29/24  Malaga County Water Dist. v. Central Valley Regional Water Quality etc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MALAGA COUNTY WATER DISTRICT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CENTRAL VALLEY REGIONAL WATER QUALITY CONTROL BOARD et al.,<br><br>Defendants and Appellants. | F084875<br><br>(Super. Ct. No. MCV071280)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Costanzo & Associates and Neal E. Costanzo for Plaintiff and Appellant.

Rob Bonta, Attorney General, Tracy L. Winsor, Assistant Attorney General, Russell B. Hildreth and Matthew J. Goldman, Deputy Attorneys General, for Defendants and Appellants.

-ooOoo-

Malaga County Water District (Malaga) and the Central Valley Regional Water Quality Control Board (the Board) have been in a long-running dispute over permitting issues and related allegations that Malaga violated certain water discharge requirements. In this iteration of the dispute, Malaga sought a writ of mandate to set aside roughly $75,000 in penalties. This court previously considered substantive aspects of the dispute and found the writ had been incorrectly denied at that time. (*Malaga County Water Dist. v. State Water Resources Control Bd.* (2020) 58 Cal.App.5th 447 (*Malaga I*).) The case was then remanded to the trial court for further proceedings.

Upon remand, the trial court found that Malaga had been harmed by the utilization of an underground regulation in the administrative proceedings, but that Malaga had not proven any allegations in the administrative proceedings were barred by laches. Both parties now appeal from that ruling.

As the primary appellant in this case, Malaga contends the trial court should not have reached the merits of its laches defense and therefore erred in denying those claims on the merits. Malaga further complains that the trial court undertook a harmless error analysis related to the use of the underground regulation. Relying on collateral estoppel arguments arising from a parallel case involving a more recent version of the procedures, Malaga contends the trial court was obligated to find the error structural and grant the writ without considering prejudice. In its cross-appeal, the Board argues the evidence was insufficient to support the trial court's conclusion that using the underground regulation was harmful to Malaga.

For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Malaga and the Board have had several matters before this court. Accordingly, for proper context, this court first outlines how some of those cases will be referred to in this opinion. The present proceedings have, as noted, been appealed to this court once before and are referred to as either the present proceedings or *Malaga I*. The present

2.

proceedings cover alleged violations occurring roughly between 2008 and 2011. Additional proceedings, which occurred in 2016 and covered alleged violations occurring after those asserted in *Malaga I*, also reached this court on appeal. This second case and our opinion in that matter, *Malaga County Water Dist. v. Central Valley Regional Water Quality Control Bd.* (2020) 58 Cal.App.5th 418, are referred to as *Malaga II*.

Based on the allegations made in this appeal, this court will first outline the relevant administrative hearing that occurred in the present proceedings. This court will then discuss relevant rulings from *Malaga II*, made after that case had been remanded for further proceedings. Finally, this court will summarize the trial court's ruling in the present proceedings. Notably, the facts detailed here assume familiarity with the history of both *Malaga I* and *Malaga II* and therefore do not include some general facts related to the context in which these issues arise.

*The Administrative Hearing from the Present Proceedings*

The underlying administrative hearing in the present proceedings, which occurred in 2013, was split into two distinct parts. The first considered the issue of laches and was limited to 10 minutes of argument for each side. The second considered the merits of the requests for mandatory minimum penalties and was limited to 30 minutes of argument per side.

At the start of the part of the hearing related to laches, Malaga noted that it had previously moved for a trial on laches, but that request had been denied by the Board's advising attorney. Malaga attempted to renew its motion for a separate laches trial based in part on the claim it was "not possible to present evidence or argument or anything of that sort in ten minutes." The Board denied this request, along with several related procedural motions, by a voice vote and then allowed the prosecution team to proceed on the issue of laches.

The prosecution team's presentation consisted of attorney argument contending laches was not a defense to the penalties as a matter of law and Malaga had failed to

3.

demonstrate the defense was applicable even if it were considered on the merits. The prosecution team made three points regarding the underlying merits related to a laches defense. First, that any delay was justified due to an issue of limited resources. The prosecution team argued that the Fresno office was staffed with only 55 people who dealt with multiple competing priorities that prevented immediate action. Second, there was no acquiescence to the settlement of any of the current claims. On this argument, the only point made was that "correcting errors" during the parties' communications did not show acquiescence. And third, Malaga suffered no prejudice because the fact that Malaga is required to self-monitor and report violations means Malaga is always in the best position to know about its improper wastewater discharge. The prosecution team argued any delay in enforcement allowed Malaga to accrue interest on money that would have otherwise gone to immediately paying penalties. This portion of the argument took up only a few pages of transcript and involved no witnesses.

Malaga began its 10 minutes by arguing laches was a legal defense that could be raised, in contrast to the tentative ruling against it on that point, and received multiple questions from the Board on that claim. As part of that argument, Malaga alleged it had no burden of showing unreasonable delay because of the presumption of unreasonableness that attached to the allegations. Malaga also called a single witness to testify that Malaga cannot determine the source of the contested pollution, Malaga is a poor entity that generally operates with a deficit, and that because of this, Malaga has a limited ability to control its business and a functional bar to going back and seeking reimbursement from polluters when enforcement is delayed. When Malaga was asked about its financial condition, the Board deemed the testimony irrelevant. When asked about shifting penalties to polluters, the witness testified they had "the same statute of limitations … to follow," which they understood to be one year, and were unable to determine who caused a violation that occurred, as an example, two years earlier. At this point, counsel was informed only two minutes remained for the laches presentation.

Counsel then ended the direct examination, the prosecution team conducted a brief cross-examination, and the parties provided concluding arguments.

The Board then briefly discussed aspects of the arguments before making and approving a motion to "decide that defense of laches is not applicable in this case … and also based on that there has been no acquiescence and no undue prejudice."

The hearing then proceeded to the mandatory minimum penalties part. The prosecution team presented its case through a supervising engineer in the Fresno office, Lonnie Wass. Wass first provided an overview of Malaga's operations and the legal requirements supporting mandatory minimum penalties. Wass then detailed a 2006 enforcement effort against Malaga and the agreement reached with Malaga at that time to complete certain compliance projects in order to waive the prior penalties imposed. Wass next described a 2008 enforcement effort that was initially withdrawn but later included in the 2013 present complaint. Wass then identified the allegations of the present complaint, pointed out where to find evidence in the record supporting those allegations, described the history of enforcement notices to and discussions with Malaga regarding the allegations, and contended Malaga had raised no substantive issue of material fact in its memorandum of points and authorities opposing the allegations. Finally, Wass explained how the specific penalties were determined.

After Wass testified, another witness, Ellen Howard, discussed issues related to a claim Malaga had an outstanding balance owed, the determination that Malaga is a small community provider, and the basis for the recommendation that Malaga not be allowed to complete compliance projects in lieu of the penalties.

Malaga then cross-examined Wass on issues related to how mandatory minimum penalties were identified and calculated, the extent of Wass's direct knowledge of violations, and how one would be expected to identify violations within the records submitted. This included discussion of one of the self-monitoring reports and the data within it, including a claim that the report did not contain a statement that the data

5.

reported constituted a violation. The cross-examination also touched on issues related to the 2006 compliance projects, the 2008 violations that were initially withdrawn, and whether certain proposed penalties were actually covered by the 2006 compliance projects. Malaga concluded its cross-examination and then called a witness to testify in its defense. The witness described Malaga's operational and financial situations and the effect penalties would have on the operation.

After some further back and forth, the parties provided closing arguments. Prior to those arguments, the Board noted, "[W]e have almost no time left," before granting a couple of minutes to both sides. In its argument, Malaga highlighted its claim that there were serious evidentiary problems that were only briefly touched upon and claimed the alleged violations were "not supported by the data" in part because there was no meaningful evidence presented that "data within those self-monitoring reports … show that type of violation." The prosecution team's response then touched on claims that Malaga had not "provided any evidence that our analysis is incorrect" and instead focused on claims that Malaga could not control its dischargers.

Ultimately, the Board adopted the recommendations of the prosecution team and found Malaga responsible for the mandatory minimum penalties related to the alleged improper discharges. The appeal on that ruling led to our opinion in *Malaga I* which, among other things, found the hearing procedure used in the administrative hearing constituted an underground regulation and remanded for a determination of whether that error was harmless.

*Malaga II Trial Court Ruling on Remand*

As noted, running roughly parallel to the proceedings in *Malaga I* was an additional set of violation allegations. In *Malaga II*, this court found a similar hearing procedure document used in those later proceedings also constituted an underground regulation and similarly remanded for further proceedings. While the parties were preparing to argue their positions regarding whether the hearing procedure document

6.

used in this case was harmful, a separate court in Fresno County considered the same issue with respect to the hearing procedure document utilized in *Malaga II*. The trial court in *Malaga II* released a 16-page order considering this issue from multiple perspectives.

The trial court began by considering a claim by Malaga that the overall magnitude of the errors that existed in the *Malaga II* proceedings constituted a structural error—an error that affects the " ' "framework within which the trial proceeds, rather than simply an error in the trial process." ' " The court reviewed the allegations made by Malaga and concluded, "Malaga was denied a fair administrative hearing and a reasonable opportunity to be heard." The court found the hearing procedures "gave Malaga only a very limited period of time to file briefs, submit rebuttal evidence, and make objections after the prosecution team served its evidence, which consisted of about 6,500 pages of documents." The limitations were "so restrictive as to make it nearly impossible for Malaga to respond to the complaint effectively."

The trial court further noted that although Malaga was permitted to file objections, those objections were "summarily overruled" and then, despite promises that such objections could be raised at the hearing, "when Malaga attempted to raise the objections at the hearing, the Board refused to hear the objections as they had already been overruled." The court then revisited the time limitations involved, noting Malaga was only given 60 minutes "to present its witnesses, cross-examine the prosecution's witnesses, and present closing arguments" and only 45 minutes to raise objections, which "were largely ignored by the Board." The court noted that these time limits prevented Malaga's counsel from fully cross-examining a witness, who admitted to a lack of personal knowledge regarding their testimony, and resulted in restrictions "so restrictive as to constitute a denial of due process."

Upon review of the overall proceedings that occurred, the trial court explained that "the Board's imposition of extremely short time limits" meant "Malaga had virtually no

time to present its defense or cross-examine the witnesses against it," and that these restrictions coupled with the Board's treatment of Malaga's objections "was a fundamental denial of Malaga's due process rights to appear and defend itself." To complete its point, the court focused on the testimony of one witness "who was allowed to read a prepared statement that was drafted by the entire prosecution team, and which contained statements that [the witness] admitted were not based on his personal knowledge." While the court recognized that hearsay evidence may be admissible in administrative proceedings to supplement or explain other evidence, this testimony was "admitted into evidence without presenting any other testimony or evidence that would have corroborated" it. This error was compounded because "the Board did not permit a complete cross-examination" of the witness "or anyone else who participated in drafting the statement." While Malaga attempted a cross-examination, "the Board cut off Malaga's attorney before he had a chance to question [the witness] in detail about the statements."

Having reviewed this evidence, the trial court found the error structural in nature. It did not stop there however, noting next that "the same facts show that the Board's reliance on the invalid hearing procedures resulted in actual prejudice to Malaga. In other words, the Board's error was not harmless." Reiterating the overall evidence above, the trial court explained that while "the Board has broad discretion to set limits on the time for presentation of the case, it cannot make those limits so unreasonably restrictive as to effectively prevent Malaga from cross-examining relevant witnesses and presenting an effective defense." The Board's summary rejection of objections and refusal to rehear them further "allowed the Board to accept the prosecution's evidence without question, while at the same time depriving Malaga of the right to challenge the authenticity of the prosecution's documents or cross-examine the authors of the documents." This protection of the prosecution's case was harmful because a proper defense could have created "a reasonable likelihood that [the Board] would have found the prosecution's

evidence to be based on inadmissible hearsay that was unsupported by other non-hearsay evidence" and "might have revealed that the [witness's] statements were unfounded."

Based on these findings, the trial court found use of the hearing procedures in *Malaga II* "constituted a denial of due process and harmful error" and remanded the proceedings back to the Board.

*The Trial Court Ruling in the Present Proceedings*

The trial court in the present proceedings was made aware of the ruling issued in *Malaga II*, but ultimately adopted its own analysis with respect to the issues raised. The trial court began its ruling by summarizing the case and those facts relevant to the issues on remand. The court explained that the underlying 2013 complaint alleged approximately 26 effluent limitation violations between March 2008 and March 2011, totaling approximately $75,000.

The trial court then looked at several aspects of the hearing procedures used and lightly summarized the underlying administrative proceedings. The court noted the hearing procedures set various deadlines, mandated that all submitted materials would be considered part of the record, and provided that each side would receive 30 minutes for presentation of evidence, cross-examination, and closing statements, along with an additional 10 minutes to argue laches. The court noted Malaga made several motions, including a motion for more time on the issue of laches, and that the Board eventually concluded that laches was inapplicable as a matter of law. And the court explained that the Board eventually found 26 violations and imposed penalties.

Following this factual summary, the trial court reviewed the legal principles governing the case. It outlined the standards for review related to administrative writs and principles related to the law of the case that are applicable when a case is remanded from a prior appeal. The court recognized that its jurisdiction was limited by the terms of the remittitur and, in considering that point, stated, "The case was sent back to this court on limited remand to address whether to issue a writ based either on the [mandatory

9.

minimum penalties] being barred by laches or if the Board's use of the void underground regulation hearing procedure was not a harmless error." (Some capitalization omitted.) The court then proceeded to consider these issues.

Looking first at the laches issue, the trial court recounted this court's ruling on appeal that "laches is an appropriate defense in the administrative proceedings considered in this case, and that the proper analogous statute of limitations is the three-year period set forth in Code of Civil Procedure section 338, subdivision (i)." Based on this, the court concluded the proper date for determining which party had the burden of proving laches was May 1, 2010. The trial court further concluded that although the Board had the burden of disproving laches for violations predating May 1, 2010, the court would apply a "substantial evidence standard" when "findings of fact have been made, and independent judgment would apply when there were no findings of fact."

Having considered these points, the trial court then found that findings of fact had been made in this case. Although recognizing that the administrative order only concluded laches was unavailable as a defense in the original administrative hearing, the trial court reviewed the record and found the transcript contained discussions related to the laches issue. Looking at this evidence in the record, the trial court found any delay in enforcement was reasonable based on factors such as the Board's limited resources, its oversight of prior violations Malaga was fixing, its efforts at issuing a new permit to Malaga, and its discovery and enforcement of new alleged violations. The court further found the Board had not acquiesced in the claimed violations because it engaged in an ongoing discussion with Malaga regarding the allegations which led to some modifications of the assertions and moved to enforcement within a reasonable time of receiving the final communication between the parties on these issues. Finally, the court found no prejudice in the alleged delay based on evidence Malaga was aware of the violations through actual notice and because of its own self-monitoring reports. This knowledge was available early enough to offset any claims the delay prevented Malaga

10.

from seeking reimbursement from the underlying offenders. Further, the court found any claim of reliance on the lack of action by the Board to support a claim there was no violation was unfounded, as the Board was regularly working with Malaga on various aspects of the violation allegations.

Looking at this evidence, the trial court concluded both that the Board had overcome any presumed prejudice arising with respect to violations predating May 1, 2010, and that Malaga could not show prejudice with respect to violations postdating May 1, 2010. The court thus concluded that Malaga was not entitled to writ relief based on the claim that laches applies to the allegations against it.

The court then turned to the use of the hearing procedure document as an underground regulation. After reviewing relevant legal principles related to whether an error is harmless in this context, the court identified four arguments made by Malaga supporting a finding that using the hearing procedures in this case was harmful. These arguments were based on four aspects of the procedures: (1) the requirement that evidence be submitted prior to the hearing; (2) the use of allegedly ex parte orders and briefs; (3) the inclusion of all submissions into the record; and (4) the time limits imposed in the case.

The trial court rejected claims that the first three constituted prejudicial error before turning to the time limits imposed in the case. The court noted that the parties "were each given only 40 minutes total (10 on the issue of laches and 30 on the merits of the … Complaint) to present their entire case" and Malaga "raised objections to the time limits at the opening of the hearing" and "did not discuss the merits of the accuracy of any specific violations in the hearing even when specifically invited to address substantive issues." The court further noted that at the trial court hearing after remand, Malaga argued there was no time to make substantive arguments below and attempted to demonstrate that substantive errors existed, "suggesting that the arguments could have been made before" the Board.

11.

Recognizing that the Board's ability to control the proceedings allows for " 'reasonable control and limitation,' " the trial court still found the time limits imposed improper. The court explained "the 40-minute time limit here, especially in light of the large and varied number of alleged violations, appears to fall outside the plain language definition of reasonable control." Based on this conclusion, the court ruled that Malaga had "demonstrated a reasonable probability that it may have obtained a different result if the time limits of the [hearing procedures] were not in place." The court therefore granted Malaga's petition for writ of administrative relief, set aside the underlying decision, and remanded for further proceedings.

The appeals in this case timely followed.

## DISCUSSION

The cross-appeals in this matter raise several issues in a partially overlapping manner. Malaga's opening brief focuses first on whether the trial court erred in conducting a laches analysis and whether that analysis can withstand scrutiny. But the brief also questions whether the trial court could conduct the harmless error analysis that ultimately fell in Malaga's favor. In its response, the Board generally contests Malaga's positions but also contends the trial court's harmless error analysis is both factually and legally flawed.

Upon review of the arguments made in this case, this court finds that the harmless error analysis is the cornerstone of the relevant disputes. Accordingly, considering the Board's affirmative position, this court will first review whether the trial court correctly concluded the error in this case is prejudicial. Upon conclusion of the analysis, this court will consider, to the extent appropriate, Malaga's arguments regarding structural error and laches.

### *The Trial Court's Harmless Error Analysis*

The Board contends in its cross-appeal that the trial court erred in concluding a 40-minute restriction on the time Malaga could present its case was harmful error under the

12.

record presented. Focusing on the nature of the cross-examination conducted by Malaga at the hearing, the arguments made in postremand briefing, and this court's prior conclusion that substantial evidence existed in the record to support the penalties imposed, the Board contends Malaga cannot demonstrate the time restrictions imposed were harmful. We do not agree.

*Standard of Review and Applicable Law*

Although this case was returned to the trial court on remand, the underlying litigation remained whether the trial court should grant the writ of mandate requested by Malaga. The ultimate question to consider, then, is "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) An abuse of discretion can occur three different ways: (1) "the respondent has not proceeded in the manner required by law"; (2) the "decision is not supported by the findings"; or (3) "the findings are not supported by the evidence." (*Ibid.*)

"In reviewing the trial court's judgment granting a petition for writ of mandate, we apply the substantial evidence test to the trial court's factual findings. [Citation.] Legal issues … are reviewed de novo." (*Fowler v. Golden Pacific Bancorp, Inc.* (2022) 80 Cal.App.5th 205, 218.)

With respect to the trial court's decision to grant a writ of mandate in this case, the decision turned on whether the Board's use of an underground regulation in the form of its hearing procedure document constituted a prejudicial error. In *Malaga I*, we concluded the Board failed to proceed in the manner required by law because it used an underground regulation, but failed to require a writ to issue because the error was subject to a harmless error analysis. An error is harmless and " 'generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1073.)

13.

The parties raise a dispute over how this court should review the trial court's ruling. The Board argues review should be functionally de novo. While it acknowledges that factual findings are reviewed for substantial evidence, it argues there were no new findings made in the trial court's analysis and thus that both the normal substantial evidence review coincides with the general abuse of discretion review and that this court owes no deference to the trial court's decision. In criminal contexts, the decision to grant a new trial based on prejudicial error, although a mixed question of law and fact, is directly reviewed deferentially while a decision to deny such a request is reviewed de novo. On collateral attack, where the decision is presumed correct, the review is generally de novo if a new trial is ordered. (*People v. Ault* (2004) 33 Cal.4th 1250, 1266–1268.) We need not resolve any potential dispute here, however, as even under an independent review, we would affirm the trial court's judgment.

*The Error Was Prejudicial*

The parties proceed, as did the trial court, on the premise that the time limits imposed for presentation of each portion of the case were, based on their inclusion in the hearing procedure document, underground regulations and therefore erroneously imposed.[1] The dispute raised below and to this court is whether the use of those time limits was prejudicial error in this case.

The Board argues that the record contains no evidence which could support a finding of prejudicial error and that this court's prior determination that substantial

---

[1] In this court's prior opinions in both *Malaga I* and *Malaga II*, the provisions of the hearing procedure document that demonstrated it constituted an underground regulation were the setting of deadlines for the submission of evidence and the procedures implemented requiring submission of all rebuttal evidence in advance of the hearing. Regularly imposed submission deadlines were also highlighted as potential violations. We did not discuss the use of time limits for presenting evidence nor review any evidence such limits were uniformly implemented across all cases. We do note that both parties proceeded as if all aspects of the hearing procedure document were applicable to all administrative adjudications. Regardless, as the parties have not challenged the trial court's ruling on this basis, we consider the issue forfeited on appeal. (See *Brown v. Deutsche Bank National Trust Co.* (2016) 247 Cal.App.4th 275, 281–282.)

14.

evidence in the record supports the penalties imposed means no error can be found. We do not agree.

With respect to this court's finding of substantial evidence in the record to support the penalties imposed, the Board's argument misses the difference between the existence of credible evidence to support a claim and the question raised here—whether some error prevented a potentially valid challenge to that evidence. Courts reviewing for substantial evidence review the record for evidence " 'of "ponderable legal significance," "reasonable in nature, credible, and of solid value," ' " regardless of whether that evidence is " ' "contradicted or uncontradicted." ' " (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935.) Even evidence contradicted by the record or subjected to effective cross-examination can constitute substantial evidence. As such, the existence of substantial evidence generally serves only to support a conclusion reached, not prove a point definitively. (See *San Joaquin Raptor Rescue Center v. County of Merced* (2007) 149 Cal.App.4th 645, 653 [noting in California Environmental Quality Act context that court's role is not to determine whether conclusions are correct but only whether there is proper evidence to support them].) The fact this court found substantial evidence in the record to support the imposition of penalties does not mean the use of an underground regulation was harmless in the context of the proceedings imposing those penalties.

The question then is whether the record shows a reasonable probability a more favorable result may have been reached had the time limits on presentation not been imposed in this case. We agree with the trial court that the record contains such evidence.

First, in the presentation regarding laches, Malaga's presentation was identifiably limited by the time imposed to present its case. Despite there being an open debate regarding the applicability of laches generally, and despite the Board recognizing Malaga's burden to prove it was prejudiced both by any delay in enforcement and by an acquiescence with respect to the violations, Malaga was granted only 10 minutes to present argument and evidence on laches. The testimony provided by the one witness

Malaga prepared for that limited timeframe was very general in nature, discussed only the issue of prejudice, and was interrupted by a two-minute warning. And the legal argument made regarding the applicability of laches was equally truncated. As this court ultimately found laches could apply in *Malaga I*, and that the timeframe by which the burden of proof shifts between Malaga and the Board is much longer than Malaga argued at the hearing, the limited time constraints strongly suggest that Malaga was prejudiced by the strict limits imposed on its ability to present a laches defense.

Next, with respect to the merits of the alleged violations, Malaga was allowed 30 minutes to cross-examine witnesses and present its own defense to nearly 30 alleged violations. This equated to approximately one minute of time to probe each of the multitude of violations, either through cross-examination or a direct defense. During the course of the proceedings, Malaga attempted to raise a dispute with the evidence in cross-examination. In that defense, Malaga argued that even though it was obligated to disclose its own violations, certain self-monitoring reports submitted to the Board did not disclose violations on their faces. Although the Board claimed the violations still existed despite Malaga's failure to identify them as such in its self-reporting, the line of examination suggested that at least some of the violations may have lacked support in the current record or could otherwise be challenged. This potential was further supported by evidence showing that Malaga had raised issues with noticed violations in the past and that the Board had adjusted the claims when it determined Malaga was correct. While the questioning did not prove an error, it raised the possibility of one, and there is no indication in the overall use of the 30 minutes of time that Malaga could not have prevailed as to at least one of the alleged violations if it had more time to properly probe them. Similarly, it appears reasonable that if given more time, Malaga could have obtained a more favorable result with respect to the availability of a compliance project to offset the penalties. Although the staff report recommended against such a result, there

was little to no discussion of compliance projects in the limited time available to Malaga despite clear indications Malaga qualified for such an option.

The Board contends that the record shows Malaga had more than enough time for its presentations, in part because its counsel ended each aspect of its presentation with the affirmation that he had nothing more. According to the Board, this shows that any suggestion more time could have aided Malaga is mere speculation. But we do not see counsel's routine statements and general presentation of evidence within the clear time limits imposed to be proof nothing more could be done. Nor, given the lines of questioning raised, the issues wholly avoided, the overall focus on time throughout the proceedings, and the number of violations relative to time provided, is a determination that additional time could reasonably have created more favorable results mere speculation. Malaga's presentation, cabined within the timeframes provided, demonstrated enough in the way of potential issues to create a reasonable inference that further time could have turned at least portions of the proceedings in Malaga's favor. We therefore agree with the trial court that the error of using an underground regulation to set artificially short timeframes for the presentation of evidence is prejudicial in this matter.

*Collateral Estoppel Is Not Applicable*

Related to the finding of error in this case, Malaga attempts to raise a direct appeal from its victory, contending the trial court should never have conducted an inquiry into whether any error was harmless because it was bound via principles of collateral estoppel to apply the conclusion reached in *Malaga II*, that the error was structural in nature. Malaga's argument suggests that the Board's appeal is fundamentally irrelevant because reversal was required regardless of any harmless error analysis. Although it appears this argument is moot because we have concluded the error is prejudicial, we reject Malaga's position on the merits.[2]

---

[2] Neither party discusses whether Malaga has standing to raise this issue on appeal. One must typically be aggrieved to raise an issue on appeal. However, as this issue could be relevant

17.

Collateral estoppel, or issue preclusion, "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) The party asserting collateral estoppel bears the burden of proving that the requirements of the doctrine have been satisfied. (*Pacific Lumber Co. v. State Water Resources Control Board* (2006) 37 Cal.4th 921, 943.)

Malaga's assertion of collateral estoppel fails two of the prongs, for similar reasons. First, the issue raised is not identical between the two proceedings. Second, the nature of the error arising from the use of the hearing procedures in this case was not actually litigated in *Malaga II*. The trial court's analysis in *Malaga II* highlights these failures. In that case, the court's finding of structural error was not exclusively tied to the basic use of a hearing procedure document. Rather, the trial court's analysis focuses on the specific timelines set in that document in relation to the extensive allegations made against Malaga, the Board's summary denials of Malaga's motions and refusal to comply with assertions those issues could be raised at the hearing, the acceptance of evidence without allowing proper cross-examination or valid challenges, and the admission of hearsay evidence unsupported by admissible evidence. Each of these factors was unique not to the hearing procedure document but to the overall administrative proceedings that

---

to the Board's contention that any error was harmless, we consider it as part of that analysis. (See *1041 20th Street, LLC v. Santa Monica Rent Control Bd.* (2019) 38 Cal.App.5th 27, 32, fn. 3 [cross-appellant seeking to affirm ruling on alternative grounds lacks standing, but court can consider alternative grounds to the extent responsive to issue in appeal].)

occurred in *Malaga II*. As such, the issue decided was that a structural error occurred in light of the hearing procedure used in *Malaga II*, along with other hearing events.

In this case, not only are there differences in the hearing procedures, specifically in the time limits imposed, but the overall structure of the proceedings is fundamentally different as well. Not only are the total number of violations and the penalties imposed different, but this court has already rejected assertions of error in the overall structure of the proceedings that might otherwise parallel the findings in *Malaga II*. The issue decided in *Malaga II* was necessarily different because the trial court considered the structural error analysis in the context of a fundamentally different administrative proceeding than occurred in the present proceedings. The issue actually litigated in *Malaga II*, the effect of the hearing procedures on those administrative proceedings, is by its nature different than the issue in question here, the effect of different hearing procedures on different administrative proceedings. Thus, even if the trial court in the present proceedings had authority to consider structural error in light of our opinion in *Malaga I* and instructions on remand, it correctly concluded that it would not be bound by collateral estoppel in its analysis.

### *The Trial Court's Laches Ruling*

Malaga's portion of this appeal also challenges the trial court's ruling that laches is not applicable under the record presented at the original administrative hearing. Malaga contends that the trial court's ruling exceeded the bounds of its authority on remand and cannot stand given the trial court's finding that Malaga was prejudiced by the restricted timelines imposed during that original administrative hearing. We decline to reach this issue.

As with Malaga's argument regarding collateral estoppel, it is unclear to this court whether Malaga's issue is properly subject to appeal. Even taken as a binding ruling by the trial court, the determination below is factual in nature, concluding only that on the prior record presented, Malaga had not demonstrated laches was applicable. Thus, the

19.

ruling would have no precedential value on remand, where a new hearing has been ordered based on the prior use of an improper underground regulation. However, this court need not reach the issue raised to resolve the appeal; the trial court's ruling cannot support a collateral estoppel claim and thus is not binding on remand. (See *Samara v. Matar* (2018) 5 Cal.5th 322, 335 [refusing to adopt a rule whereby preclusive effect would be given to trial court determinations that evade appellate review].)

This court notes, further, that our opinion in *Malaga I* clarified not only that laches was a legal defense in these proceedings, but also that for violations older than three years, the burden would be on the Board to demonstrate the delay was not prejudicial. (*Malaga I, supra*, 58 Cal.App.5th at p. 471.) In contrast, at the original administrative hearing, the Board not only concluded that laches was not an applicable defense but also placed the burden for proving prejudicial delay on Malaga for all violations, regardless of age. As such, the evidence submitted was incongruent with the legal requirements that must be met. This court does not see, therefore, how the trial court's ruling could limit Malaga's rights on remand to present a proper laches defense.

## DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.


HILL, P. J.

WE CONCUR:


LEVY, J.


DETJEN, J.

20.